# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

-Southern Division-

———————

**DeAngelo Standberry,** and
**Dominique Mclain,**

        Plaintiffs,

-v-

**Vahae Engeian,**
**Brandon Brashaw,**
**Frank Gasser,**
**Anthony Rudin**,
**Jonathan Tassis,**
and **Robert Aherns,**

        Defendants.

Case No.  2:13-cv-
Honorable:

**Nature of Case:**
42 U.S.C. §1983
U.S.C.A. 4 - Unlawful Entry;
Unlawful Arrest; Excessive Force;
Malicious Prosecution; and
State Law Concert of Action claim.

       /

The F. L. Gibson Group, P.C.
**Fred L. Gibson P39530**
Attorney for Plaintiffs
17001 19 Mile Rd., Ste 1-C
Clinton Twp., MI 48038-4867
586-416.2520 / 586-464.1629[fx]
attorneyfgibson@gmail.com

       /

A civil action between other parties arising out of the
transaction or occurrence alleged in this complaint was previously filed in
the 16th Judicial Circuit Court (Macomb County), where it was assigned
Case No. 2012-003474-CD and to the Honorable Richard L. Caretti.
That matter is still pending.

    s/ Fred L. Gibson    
    Fred L. Gibson P39530

## **COMPLAINT**

&

## JURY DEMAND

1

Each Plaintiff states:

## NATURE OF CASE

1.    Plaintiff DeAngelo Standberry and Plaintiff Dominique Mclain, each assert a 42 U.S.C. §1983 claim for Unlawful Entry; Unlawful Arrest; Excessive Force; Malicious Prosecution, and Supervisory Liability, in violation of U.S.C.A. 4, and a State Law Concert of Action claim against each of the defendants - City of Warren police officers, for injuries incurred and damages sustained from an incident that occurred on April 14, 2012, and thereafter.

## JURISDICTION AND VENUE

2.    Jurisdiction is vested in the United States District Court pursuant to 28 U.S.C.§1331; 28 U.S.C.§1343 and 28 U.S.C.§1367.

3.    Venue is appropriate in the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. §1391.  Further, the events that gave rise to this lawsuit occurred in Macomb County, Michigan.

## PARTIES

4.    Plaintiff, DeAngelo Standberry, 19, is a resident of the State of Michigan, County of Macomb.

5.    Plaintiff, Dominique Mclain, 23, is a resident of the State of Michigan, County of Wayne.

6.    Defendants, Vahae Engeian, Brandon Brashaw, Frank Gasser, Anthony Rudin, Jonathan Tassis, and Robert Aherns are residents of the State of Michigan. Upon information and belief each defendant is a resident of the County of Macomb.

7.    At all times relevant and material to the facts of this case defendants Engeian, Brashaw, Gasser, Rudin, and Tassis were employed by the City of Warren as sworn police officers, each holding the rank of police officer.

2

8.    At all times relevant and material to the facts of this case defendant Aherns was employed by the City of Warren as a sworn police officer, holding the supervisory / command officer rank of Lieutenant.

9.    At all times relevant and material to the facts of this case each defendant:

    a.    Was on-duty and working in his individual capacity as a sworn uniformed police officer on behalf of the City of Warren.

    b.    Was acting under color of law [42 U.S.C. §1983].

    c.    Was charged with the duty and obligation to execute his lawful, statutory duties within the parameters set forth by the constitution and laws of the State of Michigan and of the United States and was not to subject a private citizen, or cause a private citizen to be subjected to the deprivation of any rights, privileges or immunities secured by the Constitution and/or laws of the State of Michigan and/or of the United States.

10.   Defendants Engeian, Brashaw, Gasser, Rudin, and Tassis are each being sued in their individual capacity.

11.   Defendant Ahern is being sued in his individual and professional capacity.

## STATEMENT OF FACTS

### Report of Shots Fired to '911' by Anonymous Caller

12.   On Saturday, April 14, 2012, at about 9:30 a.m., the City of Warren's '911' police dispatch center received a call from a male reporting he had just witnessed a shooting at 21179 Blackmar. The caller abruptly hung up without providing his name or contact information.

13.   Dispatch directed cars occupied by officers Dean Toward, Brandon Brashaw, Frank Gasser, Vahae Engeian, Anthony Rudin, and Jonathan Tassis to respond to the call on Blackmar.

3

14.    While officers were responding to the Blackmar street address, dispatch advised those officers:

    a.    That it was attempting to recontact the individual who made the call, but the center's calls were going into voicemail;

    b.    That it was attempting to secure the caller's identification with the cellphone provider;

    c.    That there was a history of recent calls to the address officers were responding to, the most recent being two days previous.

15.    Officer Dean Toward was the first to arrive at the designated address, followed by defendants Brashaw, Gasser, Engeian, Rudin, and Tassis.

16.    As the officers were advising dispatch of their arrival, dispatch reported it was talking to Verizon in attempt to secure caller's identification.

17.    Toward, Brashaw and Gasser contacted the resident at the designated address. After reporting why they were there the adult female resident denied making the call or knowing who did and gave consent for the officers to conduct a walk-thru of the house to make sure all was well.  Officers did so and determined the call was unfounded.

18.    Brashaw or Gasser commented to the resident that shootings or gunshots normally generated *'tons of calls'* but not this time. The resident was then asked if she might know who made the *'prank*' 911 call.

19.    The resident alleged she had previous problems with neighbors in house next door to the north, and suggested the call might have come from there. Toward notified dispatch of the information and that officers would check next door.

20.    In response dispatch advised officers it was continuing its attempts to secure subscriber information for the anonymous caller.

**Events at 21195 Blackmar**:

21.    Toward, accompanied by Brashaw and Engeian, went to the house to the north, being 21195 Blackmar, and walked up the steps to the porch, as Rudin,

4

Gasser, and Tassis stood close by.

22.     Toward was met at the door by Standberry and Mclain.

23.     Standberry resided at 21195 Blackmar with his mother, who was not present in the home at the time. Mclain was a friend of Standberry's and a frequent visitor and overnight guest.

24.     Though there was no mention or identification of any other individuals in the home in any of the officer's reports, there were two other adults and two minor children in the home at the time of the incident that is the subject of this lawsuit.

25.     Toward informed Standberry why the officers were there, that someone had called '911' and reported a shooting or that shots had been fired.  Toward then asked Standberry if officers could come inside the house.

26.     Standberry politely advised the officers that he had been directed by his mother to not let anyone they did not know in the house without her being present and that she was not home.

27.     At about the same time dispatch could be heard on the officers' radio advising them the anonymous call came from a pre-paid cell and dispatch was still trying to secure subscriber information.

28.     Toward or another officer then asked Standberry and Mclain if they had cell phones or a Metro trak phone or words to that effect, and if so, asked if they would produce them so the officers could check them to determine if the anonymous call had come from their phones.

29.     Standberry and Mclain readily produced their cell phones to the officers.

30.     Toward left the porch to check the cell phones to determine if any calls had been made to '911' or dispatch.

**Actions involving Engeian, Brashaw, Gasser, Rudin, and Tassis:**

31.     As he did so, while on the porch, Engeian, in an agitated and aggressive tone verbally engaged Standberry and Mclain.  Engeian, or one of the other four officers who were standing close by, told them to produce their I.D.

5

32. While retrieving their I.D. Standberry again indicated they had not done anything wrong and questioned why the officers now wanted their I.D. as they had already produced their phones.

33. At some point dispatch radioed Toward, communication which all the officers could hear, asking if the female resident at 21179 Blackmar knew a Tyron McFarland.  Toward advised dispatch he would check and advise.  In response, dispatch further advised there was a history of other calls from the number that reported the 'shots fired' call that were determined to have come from the 21179 Blackmar address, including a '911' hang-up' and a '10-10' call.

34. Though aware of the information from dispatch, Engean, or one of the other four officers, opened the door to 21195 Blackmar and told Standberry and Mclain to *'step outside, that we want to talk to you'*.

35. Again Standberry asked the officers why they were being treated they way they were, that they had not done anything wrong.

36. In response, Engeian - in a voice loud enough for the entire neighborhood to hear, screamed out a number of statements, not limited to:

> '*I think you got a problem.  We're investigating a fu - - ing crime.*'
> '*You wanna get smart with me. I'll take you to jail for 15 different things.*'
> '*I don't give a s - - t! This is my City!*'

37. As this was going on, Toward had recontacted the resident at 21179 Blackmar and confirmed Tyron was a nephew who had recently been evicted from the home.

38. Toward radioed the information to dispatch, who in turn advised Toward, communications which could be heard by all the officers, that the cell phone that had called in the '911 shots fired' call had 'pinged' from a tower on Common Road.

39. Engeian and another officer, believed to be Tassis or Brashaw, barged into the home, yelling at Standberry and Mclain to '*give me your I.D.*'! followed by more

6

screaming by Engeian or one of the other officers.

40.   Gasser, Rudin and Tassis or Brashaw rushed in behind.

41.   Without basis or provocation, Engeian and Brashaw grabbed onto Standberry and violently threw him face down to the floor and handcuffed him behind his back.  Tassis assisted.

42.   Without basis or provocation, Rudin and Gasser then grabbed onto Mclain and violently threw him face down to the floor and handcuffed him behind his back. Tassis assisted.

43.   The officers, with the same violence they had thrown Standberry and Mclain to the floor, jerked them to their feet and took them from the house.

44.   Once Standberry was on the porch, without basis or provocation, Brashaw violently pushed Standberry up against the house as Gasser punched Standberry on the side of his head.

45.   Standberry and Mclain were then put into patrol cars and taken to the station. Neither was told why they were arrested or what the charges were.

46.   Toward had no involvement in the arrest of Standberry or Mclain and intentionally distanced himself from the actions of the other officers.

47.   Based solely on the information contained in the reports generated by Engeian, Brashaw, Gasser, Rudin, and Tassis, the Macomb County Prosecutor's office issued the following charges against **Standberry**:

(1): '*did assault, batter, wound, resist, obstruct, oppose, or endanger Officer Gasser, a police officer of City of Warren that the defendant knew or had reason to know was performing his or her duties, contrary to MCL 750.81d*; [a Felony], and

(2): '*did make or excite a disturbance in a street, lane, alley, highway, public grounds or park located at 21179 Blackmar, Warren, MI, contrary to MCL 750.170*, [a Misdemeanor].

7

48.  Based solely on the information contained in the reports generated by Engeian, Brashaw, Gasser, Rudin, and Tassis, the Warren City Attorney's office issued the following charges against **Mclain**:

    (1): '*Make, aid, countenance to, or assist in making any improper noise, disturbance, breach of the peace or diversion tending to a breach of the peace, in any place within the city, to wit: at 21195 Blackmar, Warren MI.* [City Ordinance §22-107];

    (2): '*Hindered, resisted or opposed a police officer in the performance of his/her duty, to wit: at 21195 Blackmar, Warren, MI.* [City Ordinance § 22-22].

49.  Standberry and Mclain were jailed and remained incarcerated until after their arraignment on the afternoon of Monday April 16.

50.  Until their arraignment Standberry and Mclain did not know the nature of the charges against them.

51.  The arraigning Judge/Magistrate imposed a $5,000.00 cash/surety bond on both. With the additional imposition of random drug and alcohol testing should they be able to post the bond. Bond was later posted on their behalf via a Bondsman.

**Dean Toward Sues City of Warren and Others**:

52.  On July 23, 2012, Dean Toward - the officer referred to in the preceding paragraphs, initiated a lawsuit in the 16th Judicial Circuit Court (Macomb County), being Case No. 2012-003474. Toward asserted a number of claims against the City of Warren and certain of its police department employees, including but not limited to a violation of Michigan's Whistleblower Protection Act.

53.  The basis for asserting the violation of the Whistleblower Protection Act was, on information and belief, in part due to Toward's complaint to Lt. Aherns, and possibly others in the Police Department, of the unlawful conduct of the officers identified herein toward the plaintiffs as well as plaintiffs' arrests which Toward

asserted to be unlawful.

**Dismissal of Criminal Charges Against Standberry and McLain**

54. On December 13, 2012, after a number of appearances in the 37th District Court, the Macomb County Prosecutor's office moved the Court to dismiss the charges against Standberry.  The City Attorney's office moved for the same relief involving Mclain.  Chief Judge Chmura dismissed all of the charges.

**COUNT I:**
**VIOLATION OF U.S.C.A. 4 - UNLAWFUL ENTRY**

55. Each plaintiff repeats each paragraph above as if fully set forth below.

56. The Fourth Amendment, made applicable to the States by the Fourteenth Amendment,  provides for the right of the people to be secure in their persons, houses, papers, and effects and further prohibits the police from making a warrantless and nonconsensual entry into a home.

57. Defendants Engeian, Brashaw, Gasser, Rudin and Tassis, each entered 21195 Blackmar, that at the time was under the control of Standberry, without permission.

58. No exception to the Fourth Amendments prohibition against a warrantless and nonconsensual entry into 21195 Blackmar existed at the time each of the defendants entered the home.

59. That the young female adult in the home, who was in the kitchen preparing breakfast for the two minor children, on seeing the officers barging into the house, yelling and screaming and grabbing onto Standberry and Mclain, yelled upstairs to the adult male who was sleeping, to hurry downstairs.

60. The adult male hurried downstairs and saw several officers in the house and Standberry and Mclain in handcuffs being taken out of the house by officers.

61. The male quickly asked what was going on and why the officers were in the house,  only to be pushed up against the wall and searched by (on information and belief) Engeian, who removed the male's phone from his pocket.

62. The male repeatedly asked (a) why the officers were in the house; (b) did they have a warrant to be in there; and (c) why Standberry and Mclain had been arrested, and followed the officers as they left the house.

63. While the male was standing on the porch, the officer, believed to be Engeian, responded to the male's inquiries, again in a voice loud enough for many in the immediate area to hear words to the effect:

> '*Get back in your fu - - ing house before I arrest you to! I will arrest you for disorderly conduct cause I don't have a s - - t else to do, I will take your ass to jail!*'

64. As Engeian started to walk back towards the house with his handcuffs out the male returned back inside the house.

65. The male then recalled that Engeian had not given him his phone back so he opened the door and asked where his phone was.

66. Engeian yelled back words to the effect: '*Your fu - - ing phone is on the TV, but you know what now you are going to fu - - ing jail!*' The male immediately shut the door and the officers left the area with Standberry and Mclain.

67. On information and belief each defendant knowingly and deliberately , or with a reckless disregard for the truth, made false statements or omissions that created a falsehood regarding the basis for their respective entry into the home occupied by Standberry and Mclain.

68. Each defendant, jointly and severally, blatantly violated the Fourth Amendment by entering 21195 Blackmar without permission and without a warrant and without any other lawful basis to do so.

69. That Aherns adopted the conduct and actions of the defendants despite being told in no uncertain terms by Toward that the joint and several actions of the defendants was improper and unlawful.

## <u>COUNT II:</u>

## <u>VIOLATION OF U.S.C.A. 4 - UNLAWFUL ARREST</u>

70. Each plaintiff repeats each paragraph above as if fully set forth below.

71. The arrest of Standberry was made without a warrant and without any probable cause to do so.

72. On information and belief each defendant knowingly and deliberately , or with a reckless disregard for the truth, made false statements or omissions that created a falsehood regarding the actions of Standberry that led to his arrest by the defendants, as more fully described above.

73. The arrest of Mclain was made without a warrant and without any probably cause to do so.

74. On information and belief each defendant knowingly and deliberately , or with a reckless disregard for the truth, made false statements or omissions that created a falsehood regarding the actions of Mclain that led to his arrest by the defendants, as more fully described above.

75. That such statements or omissions were material, or necessary, to the finding of probable cause for the arrest of Standberry.

76. That such statements or omissions were material, or necessary, to the finding of probable cause for the arrest of Mclain.

77. That falsifying facts to establish probable cause to arrest and prosecute an innocent person is patently unconstitutional.

78. That as a direct and/or proximate result of the improper and unlawful actions of each defendant, jointly and severally, Standberry was arrested, lodged, and prosecuted.

79. That as a direct and/or proximate result of the improper and unlawful actions of each defendant, jointly and severally, Mclain was arrested, lodged, and prosecuted.

80. That Aherns adopted the conduct and actions of the defendants despite being told in no uncertain terms by Toward that the joint and several actions of the defendants was improper and unlawful.

81.  That each defendant, jointly and severally, violated the Fourth Amendment by arresting Standberry without a warrant and without probable cause to do so.

82.  That each defendant, jointly and severally, violated the Fourth Amendment by arresting Mclain without a warrant and without probable cause to do so.

## COUNT III:

## VIOLATION OF U.S.C.A. 4 - EXCESSIVE FORCE

83.  Each plaintiff repeats each paragraph above as if fully set forth below.

84.  The 4th and 14th Amendment protect individuals from the arbitrary exercise and misuse of governmental power, particularly the use of excessive force.

85.  The force utilized by the individual defendants upon Standberry, as more fully described above, was objectively unreasonable in light of the facts and circumstances then and there existing.

86.  The force utilized by the individual defendants upon Mclain, as more fully described above, was objectively unreasonable in light of the facts and circumstances then and there existing.

87.  At all times relevant and material to the facts of this case each defendant was afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action.

88.  Standberry neither wanted, nor invited, nor did he provoke any of the defendants, or engage in any action that would have justified such malicious, brutal, wanton, and outright sadistic treatment and gratuitous violence by the individual defendants, as more fully described above.

89.  Mclain neither wanted, nor invited, nor did he provoke any of the defendants, or engage in any action that would have justified such malicious, brutal, wanton, and outright sadistic treatment and gratuitous violence by the individual defendants, as more fully described above.

12

90. That on the date and time above referenced, each defendant, jointly and severally, violated the law, the constitution and his sworn duty in that the act(s) and/or omission(s) attributable to each defendant, as more fully described in the paragraphs above, was willful, wanton and/or undertaken with deliberate indifference, and/or with reckless disregard to Standberry and Mclain's federally protected rights.

## COUNT IV
## VIOLATION OF U.S.C.A. 4 - MALICIOUS PROSECUTION

91. Each plaintiff repeats each paragraph above as if fully set forth below.

92. Each defendant participated in the decision to arrest, lodge, and prosecute Standberry.

93. The Macomb County Prosecutor's Office did not undertake any independent investigation as to the actions of Standberry, relying solely upon the written reports authored by the respective defendants as being truthful and complete as the basis upon which to charge Standberry with certain criminal violations.

94. Each defendant participated in the decision to arrest, lodge, and prosecute Mclain.

95. The City Attorney's office did not undertake any independent investigation as to the actions of McLain, relying solely upon the written reports authored by the respective defendants as being truthful and complete as the basis upon which to charge Mclain with certain criminal violations.

96. There was a complete lack of probable cause for the criminal prosecution of Standberry.

97. There was a complete lack of probable cause for the criminal prosecution of Mclain.

98. That as a direct consequence of the joint and several actions of each defendant, each plaintiff suffered a deprivation of his liberty, as well as continued detention without probable cause.

99.    That the criminal charges lodged against each plaintiff ended in their favor as the Prosecutor(s) for the County and for the City were without any basis to continue the prosecutions initiated by the defendants.

## COUNT V

## VIOLATION OF U.S.C.A. 4 - SUPERVISORY LIABILITY

100.   Each plaintiff repeats each paragraph above as if fully set forth above.

101.   Defendant Aherns was the supervisor for all of the defendants identified above.

102.   Aherns was fully advised by Toward that the actions of each of the defendants, as more fully described above, was improper and unlawful.

103.   On information and belief, Aherns failed to conduct a reasonable inquiry after the fact.

104.   By failing to conduct any reasonable inquiry after the fact, Aherns can be said to have encouraged and/or otherwise condoned the specific incidents of misconduct alleged to have been committed by each of the defendants.

## COUNT VI

## STATE LAW CLAIM - CONCERT OF ACTION

105.   Each plaintiff repeats each paragraph above as if fully set forth above.

106.   Each defendant was jointly engaged in the:

(a) Unlawful Entry into 21195 Blackmar;

(b) Unlawful Arrest of Standberry;

(c) Unlawful Arrest of Mclain;

(d) Use of Excessive Force upon Standberry;

(e) Use of Excessive Force upon Mclain;

(f) Unlawful and continued Prosecution of Standberry;

(g) Unlawful and continued Prosecution of Mclain.

107.   That each defendant is liable for the harm caused to or otherwise suffered by each Plaintiff as all defendants acted jointly, as more fully described above.

14

**Injury and Damages for Each Claim and Count**

108.   That as a direct and proximate result of the wrongful and unlawful act(s) and/or omission(s) attributable to each defendant, jointly and severally, as above described for each count and claim, each plaintiff suffered injuries, and damages, past, and future, including, by way of example, but not limitation, to:

   a.   Physical pain and suffering;

   b.   Abrasions and contusions;

   c.   Mental anguish;

   d.   Humiliation, mortification, outrage, and embarrassment;

   e.   Indignity of suffering an arrest, being incarcerated, and prosecuted for offenses which each plaintiff did not commit;

   f.   Other physical and emotional injuries and damages and consequences that are found to be related to the incident and events that are the subject of this lawsuit, that develop or manifest themselves during the course of discovery and trial.

**Relief Requested**

Each plaintiff requests judgement enter against each defendant, jointly and severally, in whatever amount above $75,000.00 he is found to be entitled, to include all compensatory, special, exemplary and/or punitive damages allowed by statute, case law and court rule(s), as well as the costs of this litigation, interest and reasonable attorney fees.

Respectfully,

 s/ Fred L. Gibson
Fred L. Gibson
Attorney for Plaintiffs
17001 19 Mile Road, Ste 1-C
Clinton Twp MI 48038-4867
586.416.2520/586.464.1629 [fx]
attorneyfgibson@gmail.com
P39530

15

## DEMAND FOR JURY TRIAL

Each Plaintiff demands a trial by jury of each claim and count so triable.

Respectfully,

 s/ Fred L. Gibson
Fred L. Gibson
Attorney for Plaintiffs
17001 19 Mile Road, Ste 1-C
Clinton Twp MI 48038-4867
586.416.2520/586.464.1629 [fx]
attorneyfgibson@gmail.com
P39530

16